UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH FINDLER,

          Plaintiff,         Civil Action No. 19-cv-11498
                                    Honorable Matthew F. Leitman
                                    Magistrate Judge David R. Grand

v.

CHRISTOPHER WRAY, *et al.*,

          Defendants.

_____/

**REPORT AND RECOMMENDATION
TO DENY PLAINTIFF'S MOTION FOR LEAVE
TO FILE FIRST AMENDED COMPLAINT [ECF No. 23] AND
GRANT DEFENDANTS' MOTION TO DISMISS [ECF No. 13]**

      In this civil action, *pro se* plaintiff Joseph Findler, IV ("Findler") alleges that since September 2018, he has been subjected to "a widespread harassment and stalking campaign . . . and illegal entry into his apartment . . . conducted through a Facebook Group, which . . . has over 100 million members . . ." **(ECF No. 23, PageID.134.)** He claims that the "Facebook Group has been used to terrorize, stalk, harass and conduct psychological warfare on [him], as a means to shame him in some manner, to include tracking [his] movements anywhere he went, ate, said, drank, bought, communicated . . ." (*Id.*). Some of the alleged "stalking" and "harassment" were comments people made to him, such as "Hello," "Hi," and "Thank You." (*Id.*). As defendants, he names Christopher Wray ("Wray") and Timothy Slater ("Slater"), both of whom hold high-ranking positions with the Federal Bureau of Investigations, as well as 500 Doe defendants, at least 100 of whom are allegedly FBI agents. **(ECF No. 23.)** The Honorable Matthew F. Leitman referred all pretrial matters to the undersigned on May 29, 2019. **(ECF No. 5.)**

1

Presently before the Court is a motion to dismiss filed by Wray and Slater on July 29, 2019. **(ECF No. 13.)** Findler filed a response to this motion on August 13, 2019 **(ECF No. 15)**, and Wray and Slater filed a reply on August 26, 2019. **(ECF No. 20.)** Also, before the Court is Findler's motion for leave to file first amended complaint. **(ECF No. 23.)** Wray and Slater filed a response to that motion on October 3, 2016 **(ECF No. 24.)** and Findler filed a reply **(ECF No. 25.)**.

A.    **Background**

On May 22, 2019, Findler commenced this civil action by filing a complaint against Christopher Wray, the Director of the FBI, Timothy Slater, then-special agent in charge of the Detroit Field Office of the FBI, and 500 unnamed Doe defendants, at least 100 of whom are alleged to be Special Agents of the FBI. **(ECF No. 23.)** Findler claims that the unnamed special agents of the FBI created a Facebook Group specifically to stalk and harass him. (*Id.* at PageID.143-145.) He states that the members of that group tracked his movements, accessed and stole information and media from his electronic devices, and published his personal information on the Facebook Group's webpage. (*Id.*) Some of the information he said was stolen from his personal devices allegedly include deleted emails, recordings of his phone calls and text messages, and recordings of his "facial expressions, movements, personal behavior, voice and sounds." (*Id.* at PageID.144.) He also claims FBI agents made and then disclosed "sound and/or video surveillance" of him in his car and in several hotel rooms. (*Id.* at PageID.178-179.) Findler further alleges that Wray and Slater had knowledge of these actions, and either helped coordinate them or were willfully indifferent to them. (*Id.* at PageID.145-146.) Findler claims that in committing these actions, the defendants violated his rights under the Fourth, Fifth, and Fourteenth Amendments, as well as his right of privacy.

On July 29, 2019, Wray and Slater filed a motion to dismiss, arguing that Findler's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6), because the court lacks subject matter jurisdiction, and because the complaint fails to state a claim upon which relief can be granted.  **(ECF No. 13, PageID.69.)**  Shortly thereafter Findler filed a motion for leave to file a first amended complaint, along with a proposed amended complaint.  **(ECF No. 23.)**  Findler's proposed amended complaint is very similar to his original complaint, though it adds certain additional allegations, such as that he became aware of the alleged surveillance in part by observing "visually apparent and systematic modifications of [his computers'] Android, Windows, and Linux Operating Systems, unusual private network traffic (10.0.0.0 /8) from his devices…[and] battery power that would fluctuate and vary widely near immediately at different times [] and information provided from members of the general public about what [he] was doing on his personally owned electronic devices, that could have only been ascertained if the fruits of the unlawful interception, access, monitoring, search, acquisition and surveillance were being communicated to the broader public."  (*Id*. at PageID.142-143.)  The defendants opposed the motion to amend, arguing that Findler's proposed amended complaint "adds further periphery details, [but] does not add any factual allegations that state a plausible claim for relief from [defendants]" and because "the amended complaint would still be susceptible to dismissal for the same reasons asserted in the pending motion to dismiss . . ."  (ECF No. 24, Page ID.209-210.)  Findler filed a reply insisting that the allegations in his amended complaint "are not implausible nor frivolous . . ."  (ECF No. 25, PageID.217.)

**B.     Applicable Legal Standards**

**1.     Motion to Dismiss under Rule 12(b)(1)**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests whether the court has subject matter jurisdiction over the complaint at issue.  Furthermore, Rule 12(b)(1) allows district courts to "sua sponte dismiss a complaint for lack of subject matter jurisdiction…when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).  "A case is frivolous if it lacks an arguable basis in law or in fact." *Clay v. Metropolitan Government*, 46 Fed. Appx. 348 (6th Cir. 2002).

**2.     Motion to Dismiss under Rule 12(b)(6)**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).   The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.  Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis omitted) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions." *Iqbal*, *supra* at 662. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice, 'to prevent a complaint from being dismissed on grounds that it fails to comport sufficiently with basic pleading requirements.'" (*Id.* at 678); *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard*, *Ohio*, 346 F. Appx. 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, *supra*, 556 U.S. at 679.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, No. 09-114242011 WL 1233200, at *3 (E.D. Mich. March 30, 2011).

### 3. Motion to Amend

Federal Rule of Civil Procedure 15 allows a party to amend a pleading once as a matter of right "(A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A), (B). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P.

15(a)(2). Rule 15 sets forth "a liberal policy of permitting amendments to ensure the determination of claims on their merits." *Oleson v. United States*, 27 Fed. Appx. 566, 569 (6th Cir. 2001) (internal quotations omitted). Leave to amend should only be denied where "the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't. of Treasury, State of Michigan, Revenue Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993)).

C.  Analysis

   1.  **Motion to Amend**

As Findler seems to recognize, because he filed his motion to amend (ECF No. 23.) more than 21 days after Wray and Slater filed their motion to dismiss, he may only amend his complaint with leave of court. Findler's request for leave should be denied. The original and proposed amended complaints are very similar. Both claim that hundreds of FBI agents unlawfully spied on Findler, stole his private information, and posted it on a Facebook Group, and that defendants Wray and Slater, as high-level FBI officials, displayed "deliberate indifference" to this conspiracy. (**ECF No. 1, PageID.9-10; ECF No. 23, PageID.128, 143-145.**) Findler asserts that he intended the proposed changes to his original complaint "to add context [to the defendants'] actions or omissions [to] demonstrate a reasonable inference" that the defendants were responsible for the conduct alleged." (**ECF No. 23, PageID.128.**) For instance, in his amended complaint, Findler says that the surveillance that he was subjected to was "of such an extreme measure" that only the FBI could have been capable of executing it.

(*Id*. at PageID.145.) He also seems to infer that the FBI was responsible for a temporary deletion of the Facebook group because FBI agents were aware of his information technology skills and feared his discovery of the group during his visit to an FBI field office. (*Id*. at PageID.142.)

The government asks the court to deny leave, arguing that Findler's proposed amended complaint "adds further periphery details, [but] does not add any factual allegations that state a plausible claim for relief from [defendants]" and that "the amended complaint would still be susceptible to dismissal for the same reasons asserted in the pending motion to dismiss . . ." (ECF No. 24, Page ID.209-210.) For the reasons discussed below, the Court agrees with the defendants; even if the Court were to apply the arguments in defendants' motion to dismiss to Findler's proposed amended complaint, it would conclude that it lacks subject matter jurisdiction, and that Findler has failed to state a claim upon which relief can be granted. Accordingly, Findler's proposed amended complaint is futile, and his motion for leave to amend (ECF No. 23.) should be denied.

### 2. Motion to Dismiss under Rule 12(b)(1)

Defendants first argue that the allegations in Findler's complaint and amended complaint are so implausible and frivolous that the Court lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Specifically, Defendants argue:

> [Findler] believes he is being targeted by a 100 million member Facebook Group because people say things like "hello" and "thank you" wherever he goes. [] There is no explanation of why this Facebook Group would be interested in his information. [Findler] also believes that over 100 FBI agents or employees are also involved. He offers no explanation of why the FBI would dedicate significant resources to intercepting his communications. Nor is there any explanation of how the Director of the FBI or the Special Agent in Charge of the Detroit Field Office would be involved. [Findler] also does not identify what information has been intercepted, how it was intercepted, how he knew it was intercepted by the

7

>> FBI, how he knows Defendants are aware, or even what was posted on the Facebook Group. Instead, [Findler] details his apparent purchase of numerous electronic devices to avoid these actions, and his stay at various hotels to evade surveillance.

**(ECF No. 13, PageID.74.)**

Defendants cite several cases in which courts dismissed claims resembling Findler's. For instance, in *Curran v. Holder*, 626 F.Supp.2d 30, 34 (D.D.C., 2009), the plaintiff inferred that she was the victim of espionage from the FBI from innocuous or unrelated experiences and interactions. She claimed that the FBI "conduct[ed] video and electronic surveillance of her," as Findler does here, with no proof, but only unreasonable, fanciful assumptions. The court held that the plaintiff's "bizarre conspiracy theory" allegations were "so attenuated and unsubstantial as to be absolutely devoid of merit," and "warrant dismissal under Rule 12(b)(1)." *Id.* at 33.

Similarly, in *Selvy v. Dep't of Hous. & Urban Dev.*, the plaintiff's allegations relied on the premise that "a vast international criminal consortium run by what he terms "the Freemasonry movement" has wreaked various injustices on the people of Detroit, the United States, and the whole world and has persecuted petitioner since he was a child." 371 F. Supp. 2d 905, 909 (E.D. Mich. 2005). The district court held that "[d]oubtful claims that are at least theoretically within the realm of possibility are nevertheless frivolous if the plaintiff's 'basic premise, which undergirds his entire complaint,' is 'fantastic and delusional.'" *Selvy*, 371 F. Supp. 2d 905, 908 (E.D. Mich. 2005) (quoting *Dekoven v. Bell, 1*40 F. Supp. 2d 748, 761 (E.D. Mich.), aff'd, 22 F. App'x 496 (6th Cir. 2001)).

Findler's allegations are similar to those in both *Curran* and *Selvy*. He interprets comments from strangers such as "Hello, Take Care, Are You OK, and Hi, Thank You, and Thanks" as evidence of a vast conspiracy against him. **(ECF No. 23, PageID.134-135, internal**

**quotations omitted.)** He contends that hundreds of unidentified FBI agents and the FBI's Director have, for no apparent reason, conspired to "terrorize, stalk, [and] harass [him]." (*Id.* at PageID.134.) Although not quite as extreme as allegations "that federal officials controlled the minds of plaintiff and her family through electronic devices," which unquestionably do not confer subject matter jurisdiction upon the court, *Dunigan v. F.B.I.*, 3 F. App'x 461, 461 (6th Cir. 2001), the "'basic premise, which undergirds [Findler's] entire complaint,' is 'fantastic and delusional.'" *Selvy*, 371 F. Supp. 2d at 908. Findler's allegations are thus frivolous. *Id.* Accordingly, the Court lacks subject matter jurisdiction over Findler's claims, and his complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

### 3. Motion to Dismiss under Rule 12(b)(6)

Even if the Court has subject matter jurisdiction over Findler's claims, his complaint should still be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief. As noted above, to overcome defendants' motion to dismiss under Rule 12(b)(6), Findler's complaint must contain sufficient factual matter that, accepted as true, states a claim that is plausible on its face. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable* inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully…[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Even liberally construing Findler's allegations, they fail to satisfy these pleading requirements.

Findler fails in either his complaint or amended complaint to provide any factual allegations from which the Court can draw the reasonable inference that any of the defendants are liable for any misconduct. First, the Court notes that Findler has not identified the alleged Facebook Group at issue. Nor has he identified any specific post by any member of that Group that targeted him or harassed him. Instead, he seems to be claiming that wherever he goes, he encounters people who say things to him like, "Hello," "Take Care," "Are You OK," "Hi," "Thank You," and "Thanks." **(ECF No. 23, PageID.134-35.)** It is simply not reasonable to infer from such innocuous pleasantries the type of harassment campaign that Findler subjectively perceives.

Findler's allegations with respect to the conduct of the named defendants is no more concrete. He does not allege any *facts* from which the Court could reasonably infer that defendants Slater or Wray have violated his rights in any way. **(ECF No. 13, Page.ID77-78.)** Findler's claim that the FBI and its agents are responsible for violating his privacy and due process rights seems to rest in large part on three implausible inferences that he has subjectively drawn: 1) the alleged Facebook Group that allegedly harassed him was "deleted" after he called the FBI; 2) the FBI personnel he met on January 8, 2019, behaved suspiciously, so they must have been involved in the alleged Facebook Group; and 3) the alleged Facebook Group was so powerful and capable that only the FBI could have been responsible for its actions. **(ECF No. 23, PageID.137-138; PageID.139; PageID.145.)**

Findler assigns great weight to his allegation that the alleged Facebook Group that was allegedly stalking him was deleted on the same day that he called the FBI. He claims that he called the Detroit Field Office of the FBI on January 7, 2019, to report the illegal Facebook Group. **(ECF No. 23, PageID.137.)** He told them he would go to their office the next day. (*Id.*)

10

Then, "later that night [Findler] had gotten indications that the Facebook Group…was deleted." (*Id.*)  Later that night he went to a restaurant where a waitress named "Pam, with an unknown last name [] stated, 'At least it's over,' regarding the Facebook Group . . ." **(ECF No. 23, PageID.137.)**  Findler seems to infer from this alleged sequence of events that the FBI was responsible for the Facebook Group and its deletion, that they wanted to hide the group's existence before he came in to the FBI's office the next day, and that they had planted "Pam" at the restaurant to communicate with Findler.  **(ECF No. 23, PageID.138.)**  But these are hardly the type of "reasonable inferences" the Court would have to draw to save Findler's complaint.  To the contrary, the inferences Findler subjectively draws are delusional and fantastical.

Findler also suggests that the FBI's involvement in the Facebook Group can be inferred from interactions that he had with FBI personnel during his visit to their Detroit Field Office on January 8, 2019.  Findler claims that he spoke to an FBI agent, and that after he "discussed the stalking and harassment of the group and stated that [he] believed it was a secret Facebook Group…[the agent] corrected [him] and stated, 'it's a closed Facebook Group.'"  **(ECF No. 23, PageID.139.)**  Findler claims that "that information could only be ascertained if [the agent] was aware of the Facebook Group heren [sic] identified previously." (*Id.*)  Findler concludes that this alleged awareness leads to the inference that the FBI was actively violating his constitutional rights.  Findler alleges that he spoke more to the agent about the Facebook Group, and that after describing a timeline of its activities, the agent said, "[a]nd then you put in a FOIA request." (*Id.*)  Findler found this suspicious, because he "had never stated anything about a FOIA request up until that point or any other time previously," though he alleges he had sent a FOI request to the Department of Veteran Affairs a month earlier **(ECF No. 23, PageID.136, 139.)**  Once again, Findler assumes from this alleged conversation that this "information could only be ascertained

11

if [the agent] was aware of the existence of the Facebook Group." (*Id.*) However, as stated above, these conclusory assumptions about an alleged massive hundred-million-user Facebook Group being directed by the FBI to stalk and harass Findler (for no apparent reason, at that) do not allow the Court to draw the "reasonable inference" that the FBI or its agents had any involvement whatsoever in the alleged Facebook Group.

Finally, Findler states that the sheer capability of the Facebook Group means that only the FBI could be responsible for its actions. **(ECF No. 23, PageID.145.)** More specifically, he alleges, "The…interception and monitoring was of such an extreme measure that it would require significant resources and manpower… only such an agency (FBI) would have the capability to monitor, intercept, and surveil all [the] Plaintiff's electronic communication and devices." **(*Id.*)** Again, this is an unreasonable inference that this Court declines to make even under liberal pleading standards applicable to *pro se* litigants like Findler. There are simply no facts pleaded which link the FBI or any of its agents to the allegations in the complaint.

In sum, Findler has not provided sufficient facts from which one could reasonably conclude that the FBI or any of its agents (or any of the defendants, for that matter) had any involvement whatsoever in the alleged Facebook Group's operation or deletion. *See*, *Twombly*, 550 U.S. at 546 (The alleged conduct needed "further factual enhancement [to cross] the line between possibility and plausibility of entitlement to relief.").

Accordingly, Findler has not pleaded sufficient facts that allow the court to reasonably infer that any of the defendants are liable for any of the misconduct alleged. Accordingly, the Rule 12(b)(6) motion to dismiss filed by defendants Wray and Slater should be granted, and this case should be dismissed for failure to state a claim upon which relief can be granted.

### D.     RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that Findler's motion for leave to file a first amended complaint **(ECF No. 23)** be **DENIED**, defendants Wray and Slater's motion to dismiss **(ECF No. 13)** be **GRANTED**, and that this case be dismissed for failure to state a claim upon which relief can be granted.


Dated: November 13, 2019               s/David R. Grand
Ann Arbor, Michigan                    DAVID R. GRAND
                                       United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 13, 2019.

s/Eddrey Butts
Eddrey Butts
Case Manager
